IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:20CR00185 JAR (ACL) |
| | ) |
| CAMERON C. ACOSTA, | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT

Defendant Cameron C. Acosta is charged in a three-count indictment with possession with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1) (Counts I and II) and possession of firearms in furtherance of these drug-trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count III).  He has moved to dismiss the indictment based on Missouri's Second Amendment Preservation Act, Mo. Stat. 1.410-1.485, which, he claims, prevents him from being prosecuted for the federal crimes charged in this case.  This Court should deny the motion to dismiss because:  (1) the Supremacy Clause prevents states from impeding the enforcement of federal law; (2) any limitation on the federal government's power to subpoena Missouri law enforcement officers as witnesses would be invalid and would provide no reason to dismiss; and (3) the Act does not apply to Acosta because (a) he has not identified any violation of the Act after its effective date and (b) he is not a "law-abiding citizen" under the Act.

## Background

In late March 2018, a confidential informant told Sergeant Drum of the Ripley County Sheriff's Department that the informant had purchased marijuana, cocaine, and Xanax from James

Moore at Moore's home, specifically describing the quantities purchased. Gov't. Resp. to Mot. Suppress Evid. at 3. The informant stated that Moore had firearms inside his home. *Id.* On April 2, 2018, law enforcement officials executed a state search warrant at Moore's residence, finding Moore, Acosta, a woman, and two children inside. *Id.* at 3-4. They seized more than eight pounds of marijuana, 60 grams of cocaine, a small quantity of Ecstasy, four firearms, ammunition, digital scales, and plastic baggies. *Id.* at 2. Most of the drugs and three of the firearms were found in a bedroom identified as Acosta's and in a duffle bag that Acosta later admitted was his. *Id.* at 4-6.

The grand jury indicted Acosta in this case on December 1, 2020. Six months later, on June 12, 2021, Missouri's governor signed the Second Amendment Preservation Act into law. Among other things, the Act asserts that certain types of federal laws "shall be considered infringements on the people's right to keep and bear arms" under the Second Amendment and the Missouri Constitution, including any law or regulation that prohibits "the possession, ownership, use, or transfer of a firearm . . . by law-abiding citizens." Mo. Stat. 1.420(4). The Act purports to declare that such laws "shall be invalid to this state, shall not be recognized by this state, shall be specifically rejected by this state, and shall not be enforced by this state." Mo. Stat. 1.430. The Act further prohibits any "entity or person," including state and local officials, from "enforc[ing] or attempt[ing] to enforce" these federal laws or "[g]iv[ing] aid and material support" to someone who does. Mo. Stat. 1.450. The Act imposes "a civil penalty of fifty thousand dollars" per occurrence on any "political subdivision or law enforcement agency" that employs such a person. Mo. Stat. 1.460.1. The Act contains exceptions for "provid[ing] material aid to federal prosecution" for "[f]elony crimes against a person" or "felony violations substantially similar to" certain state drug offenses where the federal weapons charges are "substantially similar to those

found in chapter 570 and chapter 571" of the Missouri Code and are "merely ancillary to such prosecution." Mo. Stat. 1.480.4.

Acosta asserts that Missouri's Second Amendment Preservation Act requires dismissal of the indictment because the case "has been investigated solely by public officers or state employees of [Missouri] and its political subdivision the Ripley County Sheriff's Department." Doc. # 32 at 3. Acosta maintains these law enforcement officers "have no authority to enforce or attempt to enforce any federal laws, order, or rules infringing on [his] right to keep and bear arms." *Id*. In Acosta's view, the "participation of public officers and state employees in this prosecution will deprive [him], a Missouri citizen, of his rights and privileges ensured by the Federal and State Constitutions to keep and bear arms" and will subject these employees "to liability including monetary damages." *Id*.

## Argument

The Court should deny Acosta's motion to dismiss for several reasons.

First, and most fundamentally, the Supremacy Clause of the U.S. Constitution prevents the State of Missouri from nullifying federal criminal laws. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). As the Supreme Court has explained, "in those areas where the Constitution grants the Federal Government the power to act, the Supremacy Clause dictates that federal enactments will prevail over competing state exercises of power." *United States v. Gillock*, 445 U.S. 360, 370 (1980). "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys,*

3

*Inc.*, 471 U.S. 707, 713 (1985).  And state legislators, who are bound by an oath to support the Constitution of the United States, U.S. Const. art. VI, cl. 3, have no power to "nullify [federal] statutes passed in pursuance" of the Constitution.  *United States v. Reynolds*, 235 U.S. 133, 149 (1914); *see Anderson v. Carkinsi*, 135 U.S. 483, 489 (1890) (observing that "it is not within the power of a state, directly or indirectly, to nullify or set . . . at naught" federal statutes).

Here, the federal statutes that Acosta is charged with violating fall squarely within Congress's "power to act."  *Gillock*, 445 U.S. at 370.  The Supreme Court has upheld 21 U.S.C. § 841 as a valid exercise of Congress's Commerce Clause power, even as applied to the intrastate cultivation and possession of marijuana.  *Gonzales v. Raich*, 454 U.S. 1, 22 (2005).  And, along with every other court of appeals to consider the question, the Eighth Circuit has held that § 924(c) is a valid exercise of Congress's Commerce Clause power where the charge is based on a drug trafficking offense that is itself within Congress's power to regulate.  *United States v. Brown*, 72 F.3d 96, 97 (8th Cir. 1995) (per curiam); *see United States v. Cruz-Rivera*, 904 F.3d 63, 67 (1st Cir. 2018) (citing cases).

Although the Missouri Act purports to invalidate federal laws that violate the Second Amendment, Mo. Stat. 1.420, Acosta does not even attempt to show that 18 U.S.C. § 924(c) violates the Second Amendment.  Nor could he.  The Supreme Court has made clear that the Second Amendment does not protect a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).  And the Court has said that its decisions should not be read to "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill" and other "presumptively lawful" limitations.  *Id.* at 626 & n.26.  Accordingly, courts in the Eighth Circuit and elsewhere have repeatedly rejected Second Amendment challenges to § 924(c).  *See United States v. Davis*,

4

347 F. App'x 267, 267 (8th Cir. 2009) (unpublished); *Garcia v. United States*, No. 08-00311-CR-W-FJG, 2014 WL 3698176, at *1-2 (W.D. Mo. July 25, 2014); *United States v. Bryant*, 711 F.3d 364, 368-70 (2d Cir. 2013); *United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011) (per curiam); *United States v. Jackson*, 555 F.3d 635, 636 (7th Cir. 2009); *Costigan v. Yost*, 334 F. App'x 460, 462 (3d Cir. 2009); *United States v. Frazier*, 314 F. App'x 801, 807-08 (6th Cir. 2008). As the Ninth Circuit observed, "it cannot seriously be contended that the Second Amendment guarantees a right to use a firearm *in furtherance of drug trafficking*." *Potter*, 630 F.3d at 1261.

Because the federal offenses with which Acosta is charged are within Congress's power to legislate and are consistent with the Second Amendment, the State of Missouri has no authority to invalidate those laws or otherwise interfere with this federal prosecution. "The government of the United States . . . , though limited in its powers, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land, 'anything in the constitution or laws of any state to the contrary notwithstanding.'" *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 406 (1819). Indeed, the Tenth Circuit has rejected defendants' attempted reliance on Kansas's Second Amendment Protection Act in a federal firearms prosecution, observing that "allowing state legislatures to estop the federal government from prosecuting its laws would upset the balance of powers between states and the federal government and contravene the Supremacy Clause." *United States v. Cox*, 906 F.3d 1170, 1192 (10th Cir. 2018). To the extent the Missouri Act purports to invalidate the federal statutes at issue here, the Act is itself invalid.

Second, at least to the extent the Act impedes the federal government from subpoenaing state and local law enforcement officers to testify in this federal prosecution, the Act is also invalid

under the doctrine of intergovernmental immunity and ordinary preemption principles.[1] The intergovernmental immunity doctrine "derive[s] from the Supremacy Clause," *United States v. Washington*, 994 F.3d 994, 1014 (9th Cir. 2020), and renders a state regulation invalid "if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals," *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion). As the Supreme Court explained in *McCulloch v. Maryland*, "[t]he states have no power . . . to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by [C]ongress to carry into execution the powers vested in the general government[.]" 17 U.S. at 436. And under conflict-preemption principles, which also derive from the Supremacy Clause, a state law is preempted "when compliance with federal and state regulations is a physical impossibility or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillsborough Cnty.*, 471 U.S. at 713.

Under these principles, the Second Amendment Preservation Act is invalid, at the very least, to the extent it prohibits state and local officials from complying with federal subpoenas and testifying in federal judicial proceedings. Courts have repeatedly held that state privacy laws and rules of professional conduct must yield to federal subpoenas, including administrative subpoenas. *See Standing Akimbo, LLC v. United States*, 955 F.3d 1146, 1158 n.21 (10th Cir. 2020) (IRS summons); *Presley v. United States*, 895 F.3d 1284, 1292 (11th Cir. 2018) (same); *United States v. Zadeh*, 820 F.3d 746, 754-55 (5th Cir. 2016) (DEA subpoena); *Or. Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1236 (9th Cir. 2017) (same); *Baylson v. Disciplinary Bd. of Supreme Ct. of Pa.*, 975 F.2d 102, 111-12 (3d Cir. 1992) (grand jury subpoena to attorneys);

---

[1] The federal government issued subpoenas to the state and local law enforcement officers involved in the investigation to testify at an evidentiary hearing on Acosta's Motion to Suppress Evidence.

6

*see In re Grand Jury Subpoena*, 198 F. Supp. 2d 1113, 1115 (D. Alaska 2002) ("District courts all over the country have subscribed to the proposition that the Supremacy Clause gives federal grand jury investigative powers precedence over state confidentiality statutes."). Missouri lacks constitutional authority to prevent its law enforcement agents from complying with subpoenas issued by federal courts.

Moreover, even if Missouri had the power to prohibit state and local agents from participating in a federal prosecution (and it does not), that fact would not justify dismissing the indictment. At most, the agents' participation in a federal prosecution would be a violation of *state* law subjecting them to civil damages. See Mo. Stat. 1.460.1 (imposing "a civil penalty of fifty thousand dollars" per occurrence on any "political subdivision or law enforcement agency" that employs a person who provides assistance in violation of the statute). But where no federal law is violated, the potential civil consequences to state agents would provide no basis for dismissing the federal charges.

Although enforcement of the Second Amendment Preservation Act might have a chilling effect on state agents and illegally deny the federal government crucial law-enforcement witnesses, the decision whether to proceed with the charges on other evidence would be for the government, not this Court, to make. *See Bond v. United States*, 572 U.S. 844, 865 (2014) (observing that "[p]rosecutorial discretion" requires weighing "the evidence needed to convict," among other factors). Once a grand jury has found probable cause, the possibility that the government cannot muster sufficient evidence to obtain a conviction at trial provides no basis to dismiss the indictment. *See Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for the trial of the charge on the merits."). Thus, Missouri's attempt to strip the federal government of any

help from state or local law enforcement, even if valid and enforceable, would not justify dismissal of the indictment.

Finally, dismissal of Acosta's indictment is inappropriate because the Second Amendment Preservation Act does not, by its own terms, apply to Acosta's prosecution. Although the bill enacting the Second Amendment Preservation Act states that the act "shall be in full force and effect upon its passage and approval," Mo. House Bill Nos. 85 & 310, Section B, 101st Gen'l Assembly (2021), the statute's operative language says that "[t]he provisions of sections 1.410 to 1.485 shall be applicable to offenses occurring on or after August 28, 2021," Mo. Stat. 1.480.5. Acosta's offenses occurred in 2018—over three years earlier. And there is no indication that the Act applies retroactively. *See Univ. of Iowa Hosps. & Clinics v. Shalala*, 180 F.3d 943, 951 (8th Cir. 1999) (citation omitted) ("Because of retroactivity's disfavored status, statutes are presumed to operate only prospectively."). The Act's wording therefore indicates that its penalties do not apply to conduct that occurred before August 28, 2021, or, at the very least, before the statute's enactment on June 12, 2021.

Acosta does not explain how the Act applies to any events that have occurred in his case up to this point. His underlying criminal offenses (in March 2018) and the federal indictment (in December 2020), took place well before the Act became law in June 2021. Acosta does not allege that any state or local law enforcement officials have taken any action violating the Act since its enactment. And the Act's stated effective date of August 28, 2021, has not yet passed.[2] Thus, Acosta has failed to identify any violation of the Act. The most he can claim is that state and local officers *will* violate the Act if they assist in his federal prosecution at some future date. *See* Motion

---

[2] Indeed, the State has clarified in a filing in Missouri state court that the law's penalty provisions will not have operative effect until at least August 28, 2021. *See City of St. Louis v. State of Missouri*, No. 21AC-CC00237, Joint Mot. at 1 (Mo. 19th Cir. Ct. June 25, 2021).

8

to Dismiss at 4 ("The U.S. Attorney's office does not have the ability to prove the elements of these offenses without the material aid of the public officers and state employees of Missouri . . . ."). But that claim is not yet ripe.

Even after the Act takes effect, it will not apply to Acosta because he is not a "law-abiding citizen." The relevant portion of the Act applies to federal laws "forbidding the possession, ownership, use, or transfer of a firearm . . . by law-abiding citizens." Mo. Stat. 1.420(4). And the Act defines "law-abiding citizen" to mean "a person who is not otherwise precluded under state law from possessing a firearm." Mo. Stat. 1.480.1. Acosta fails to satisfy this definition because Missouri law expressly prohibits a person from "possess[ing] a firearm while also knowingly in possession of a controlled substance." Mo. Rev. Stat. § 571.030.1(11) (2017). Here, the government plans to elicit evidence, including Acosta's own admissions, that he possessed multiple firearms and distributable quantities of cocaine and marijuana and was actively engaged in the distribution of controlled substances. *See* Gov't. Resp. to Mot. Suppress Evid. at 2-6 (summarizing facts). Because Acosta's simultaneous possession of firearms and drugs violates state law, he is not a "law-abiding citizen" under the Second Amendment Preservation Act.

Acosta does not address whether he is a "law-abiding citizen," but instead argues that this prosecution does not fall within the Act's exception for weapons violations that are "merely ancillary" to a drug-related prosecution. Mot. to Dismiss at 3-4; *see* Mo. Stat. 1.480.4(2). This argument is misplaced for two reasons. First and foremost, there is no need to resort to Section 1.480.4's exceptions because Acosta is not a "law-abiding citizen" and the Act therefore does not apply to him in the first place. Second, regardless of whether the federal firearms charges were "merely ancillary" to the drug charges, Section 1.480.4(2)'s exception would not apply for another reason. That exception applies to "Class A or class B felony violations substantially similar to

9

those found in chapter 579." Mo. Stat. 1.480.4. Although Acosta's federal drug-distribution charge is substantially similar to a Class C felony under chapter 579 of the Missouri Code—specifically, delivery of a controlled substance, in violation of Mo. Stat. 579.020—it is not substantially similar to a Class A or B felony, which would require distribution to a minor, Mo. Rev. Stat. § 579.020.5, or distribution of amounts greater than those that Acosta possessed here, *see* Mo. Rev. Stat. § 579.065.1(2), (7) (applying to more than 150 grams of cocaine and more than 30 kilograms of marijuana). Regardless, Acosta fails to fall within the Second Amendment Protection Act, not because this case involves a "merely ancillary" weapons charge under Mo. Stat. 1.480.4(2), but because Acosta is not a "law-abiding citizen" under Mo. Stat. 1.420(4).

## Conclusion

For all these reasons, the defendant's motion to dismiss should be denied.

SAYLER A. FLEMING
UNITED STATES ATTORNEY

/s/ John N. Koester, Jr.
JOHN N. KOESTER, JR., #52177MO
ASST. UNITED STATES ATTORNEY
555 Independence, 3rd Floor
Cape Girardeau, MO 63703
(573) 334-3736

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Curtis O. Poore
Attorney for Defendant

/s/ John N. Koester, Jr.
John N. Koester, Jr.
Assistant United States Attorney

10

11